STATE *ex rel.* FRED S. HARTMAN, AS COMMITTEE
OF REBECCA K. HARTMAN, ETC.

*v.*

GEORGE C. DUFFIELD, EXECUTIVE SECRETARY, WEST VIRGINIA
PUBLIC EMPLOYEES RETIREMENT SYSTEM

(No. 12300)

Submitted January 8, 1964.     Decided February 4, 1964.

*Theodore H. Ghiz,* for relator.

*C. Donald Robertson,* Attorney General, J. *Patrick
Bower,* Assistant Attorney General, for respondent.

BERRY, JUDGE:

This mandamus proceeding was instituted in this Court
under its original jurisdiction by Fred S. Hartman, as
Committee of Rebecca K. Hartman, an incompetent per-
son, against George C. Duffield, Executive Secretary, West
Virginia Public Employees Retirement System, to com-
pel him as said Secretary to accept petitioner's applica-
tion as committee for Rebecca K. Hartman, for election
of Annuity Option A provided for in Section 24 of the
West Virginia Public Employees Retirement Act. A rule
to show cause was issued by this Court December 17,
1963, returnable to January 8, 1964. An answer and de-

murrer were filed by the respondent and the matter was submitted for decision on arguments and briefs on January 8, 1964.

The only question involved in this proceeding is whether a committee of an incompetent can exercise the right of election as to Options provided for in the Retirement System. The West Virginia Public Employees Retirement Act was passed by the 1961 Regular Session of the West Virginia Legislature and became effective on July 1, 1961. This Act amended the West Virginia Code of 1931 by the insertion therein of Chapter 5, Article 10. It covered all employees of the State at the time the Act became effective and provided for credit to be given to such employees for past services with the State.

Rebecca K. Hartman began working for the State of West Virginia on or about April 4, 1940, and was continuously employed by the State for over twenty years. In June or July, 1961, she suffered a "subarachnoid hemorrhage" which resulted in permanent damage to her brain, leaving her physically and mentally incapacitated. At the time she suffered this cerebral accident, she was a member of the Retirement System and could have selected one of the various Options thereunder, but had not done so. On December 5, 1963, Fred S. Hartman, the petitioner and husband of the said Rebecca Hartman, was appointed Committee for her, and on the same day filed a written application on forms provided by the West Virginia Public Employees Retirement System for election of Option A, which provided for a joint and survivor annuity. This election was made by the said Fred S. Hartman, as Committee for Rebecca K. Hartman, and nominated as her survivor beneficiary Fred S. Hartman. The respondent, George C. Duffield, on the same date the application was filed, acknowledged receipt of the application for benefits under the Act in question, and advised the petitioner that the Retirement System could not honor his request for election of Option A, because there was no provision in the Act for election in such a case, and, that under the circumstances, the petitioner's wife and ward was only entitled to the straight life annuity.

Section 22 of the Act in question [Code, 5-10-22, as amended] provides that upon a member's retirement, a straight life annuity, based on his service, would be paid to such member, and also that he shall have the right to elect an Option provided for in Section 24.

Section 24 of said Act [Code, 5-10-24, as amended] provides that prior to the effective date of such retirement, but not thereafter, a member may elect to receive his annuity as a straight life annuity for his life or he may elect to receive a reduced annuity for life and nominate a beneficiary in accordance with Options A or B. Option A, which the petitioner attempted to select, provides that upon the death of the retired person who elected Option A, such reduced annuity shall be paid to a person having an insurable interest in the life of the retired state employee, such person having been nominated by a written designation duly executed and filed with the board of trustees prior to the effective date of the employee's retirement.

Section 25 of the Employees Retirement Act [Code, 5-10-25, as amended] provides for disability retirement which is involved in this proceeding.

It is conceded by the parties that the petitioner's ward, Rebecca K. Hartman, is totally and permanently incapacitated, that the medical examination required under this Section has been complied with, and that the only part of said Section to be considered in this proceeding is Subsection (c), which reads:

"Upon a member's retirement, as provided in this section, he shall receive a straight life annuity computed according to section twenty-two hereof and he shall have the right to elect an option provided for in section twenty-four hereof:
* * * "

Under Subsection (c) of Section 25, the Disability Retirement Section, if no election is made by such disabled retired member of the Retirement System, the member would automatically receive the straight life annuity which would result in greater monthly payments being

made to him. However, if not mentally disabled, such member could select either Option A, the Joint and Survivor Annuity, or Option B, Modified Joint and Survivor Annuity, which would result in a lesser amount being paid to such retired member for his or her life, and upon his or her death, payments would be made to the designated person having an insurable interest in the member's life. In the case at bar, it appears that there are other persons who may have an insurable interest in the life of Rebecca K. Hartman, including a seventeen year old daughter by a former marriage. It may be that had Rebecca Hartman not become mentally incapacitated, she would have selected her daughter as her beneficiary under said Act. However, in any event, if any election was allowed in this case, the ward of the petitioner would receive a smaller amount to be used for her care and welfare during her lifetime.

It is generally held that an insane or incompetent person is not capable of exercising a right or power of election and any election on behalf of a mentally incompetent person under guardianship ordinarily should be exercised or approved upon petition to a court of competent jurisdiction. 44 C.J.S., Insane Persons, Sections 85 and 100. See *McDonald, Committee* v. *Jarvis,* 64 W. Va. 62, 60 S. E. 990, 131 Am. St. Rep. 889. Code, 27-11-4, as amended, provides that a committee shall preserve the estate of an insane or mentally incapacitated person and manage it to the best advantage.

It was held in the early West Virginia case of *Hinchman, Admr.* v. *Ballard, Admr.,* 7 W. Va. 152, 179, that a committee is not authorized to change the nature of an estate of an insane person without the direction or approval of a court having jurisdiction of the subject, and in the management of such an estate, the interest of the mentally incompetent person is to be considered first and above that of any contingent interest of those entitled to any succession.

The Virginia case of *Lake* v. *Hope,* 116 Va. 687, 82 S. E. 738, dealing with a statute pertaining to committees,

which statute is practically the same as the West Virginia statute, held that the care, welfare and comfort of the mentally incompetent person alone are to be considered, without reference to the next of kin or heirs. The case of *Feltner* v. *Teachers' Retirement Board*, 235 App. Div. 207, 256 N.Y.S. 826, is quite similar to the case presented here wherein it was held that neither the committee for the incompetent nor the incompetent, during the incompetency, could make any election depriving incompetents of the greatest benefits obtainable under the law. The *Feltner* case further held that incompetent persons are wards of the court, and it is the duty of a court to protect them. The courts are empowered to protect the best interest of the incompetent, regardless of the effect on the interest of others.

In the Ohio case of *In Re Sellers' Estate*, 154 Ohio St. 483, 96 N. E. 2d 595, the court stated that the authorities generally hold that the guardian of an incompetent is unauthorized, without court authority, to change a beneficiary in an insurance policy. To the same effect is the New York case of *In Re Wainman's Estate*, 200 N.Y.S. 893, in which it was decided that a committee cannot change the beneficiary of the incompetent's life insurance policy, and that it is the duty of the committee to attend to the personal comfort of his ward without reference to the heirs at law and expectants. It was held in the case of *Howard* v. *Imes*, 265 Ala. 298, 90 So. 2d 818, that an act which requires the exercise of a personal elective right of an incompetent person cannot be done by a guardian or committee.

It will be seen that the authorities are uniform in cases involving a right of election, either under annuity provided in retirement funds or in an insurance policy, in that a committee or guardian for an incompetent is not authorized to make such an election, and that the prevailing rule in such cases, in any event, is to give the incompetent the largest amount possible under the circumstances for his or her health, care and welfare. In the instant case, if the incompetent person, Rebecca K. Hartman, receives a straight life annuity she will receive more

for her use and benefit than if an election under Option A, which petitioner attempted to make, was granted. Therefore, under the authorities governing such matters, the application on behalf of the petitioner, as committee for an incompetent, electing to receive an option which would reduce the amount of money for the incompetent should be rejected, and the respondent in so doing acted properly and in accordance with the decisions in such cases.

Accordingly, the demurrer of respondent is sustained and the writ prayed for is denied.

*Writ denied.*